ELECTRONICALLY FILED
2022 Dec 05 PM 6:25
CLERK OF THE LEAVENWORTH COUNTY DISTRICT COURT
CASE NUMBER:  LV-2022-CV-000308
PII COMPLIANT

# IN THE DISTRICT COURT OF LEAVENWORTH COUNTY, KANSAS
# CIVIL COURT DEPARTMENT

|  |  |  |
|---|---|---|
| EBONY SHAFFER | ) | |
| Plaintiff | ) | Case No. |
| | ) | |
| vs. | ) | Division: |
| | ) | |
| CITY OF LEAVENWORTH AND | ) | |
| LEAVENWORTH POLICE | ) | |
| DEPARTMENT | ) | |
| Defendant | ) | |

## COMPLAINT FOR DAMAGES

**COMES NOW** the Plaintiff, Ebony Shaffer, by and through undersigned counsel of record, and hereby respectfully submits to the Court Plaintiff's *Complaint for Damages*. In support of this *Complaint*, Plaintiff states and alleges as follows:

## Facts Common to All Requested Relief

1.      That Plaintiff, Ebony Shaffer ("Ms. Shaffer"), is a good faith resident of the State of Kansas, presently residing at 16776 Dakota Drive, Leavenworth, Kansas 66048.

2.      That Defendants, The City of Leavenworth, and The Leavenworth Police Department, are also good faith residents of the State of Kansas, presently "residing" 100 N 5th St, Leavenworth, KS 66048 and 601 S 3rd St #2055, Leavenworth, KS 66048, respectively.

3.      That this Court has personal jurisdiction over Defendants, and subject matter jurisdiction over this action.

4.      That venue in the District Court of Leavenworth County is proper.

5.      The factual basis of the claim is as follows:

   a)   At 2:59 p.m. on December 7, 2020, Plaintiff received a phone call from her daughter, Kiara, who had just been notified by the Leavenworth Police

**EXHIBIT A**

Department that the Plaintiff's father had passed away in his home. The Plaintiff told Kiara that she would meet her at her father's house after she composed herself.

b) At approximately 3:15 p.m., the Plaintiff arrived at Willie's residence located at 76 Sheridan, Leavenworth, Kansas. Kiara gave the Plaintiff a paper from the police officers identifying a case number 20-21474, Officer Tapia #1630, Officer N. Vogel #1421, and phone numbers for Frontier Forensics, as well as the non-emergency police department line.

c) The Plaintiff went downstairs into the garage where her father had been found and saw a white flannel sheet on the garage floor. She then went into Willie's "man-cave" area and saw piles of clothes that had been removed from his armoire and heaped on his recliners and two now empty plastic jars that were previously filled with loose change. After Kiara left, the Plaintiff remained at the residence awaiting her brother's arrival.

d) At 4:47 p.m., the Plaintiff called the non-emergency number for the police department. She explained that the police had provided her with a case number and that she was calling about the death of her father. She further explained that she was not sure what the next steps were. The operator informed the Plaintiff that she needed to contact Frontier Forensics about obtaining her father's body and to notify them where his body should be released.

e) Shortly after this conversation, the Plaintiff's brother arrived. She showed him where their father had been found and the "man-cave" area.

2

When they went upstairs to the bedrooms, they found the closets to be in complete disarray and appeared as though they had been ransacked. The Plaintiff then proceeded to secure the house by removing any firearms that were in plain sight (e.g., multiple air riles located in the "man-cave") and changing the locks/deadbolts to the house.

f) Willie's funeral was held on December 14, 2020.  On December 16, 2020, the Plaintiff and her husband began going through Willie's personal belongings at his home.  They knew Willie had always his hid firearms and knives throughout the home in well hidden, inconspicuous places. Upon searching these locations, however, they found only empty gun cases, empty knife boxes, and missing ammo for the firearms.  The Plaintiff's husband (a Federal Firearm Licensed dealer) instructed the Plaintiff to contact the police to report the stolen firearms.

g) At 3:41 p.m., the Plaintiff contacted the police department's non-emergency number and told the operator she needed to file a police report for the missing firearms.  The operator asked for the address and the number of firearms missing.  After a prolonged pause, the Plaintiff was told that two officers would be out shortly to take her report.

h) At 3:54 p.m., the Plaintiff received a call from Officer Adams informing her that the police would not be out to take a report.  Moreover, the police department had searched the home and taken possession of five firearms belonging to Willie.  When asked why the police department had taken the firearms without alerting her, or anyone, Officer Adams replied that they were

taken "for safekeeping."   He added that it is standard procedure for the police department to seize firearms and prescription medication so no one could get to them.  Regarding the additional missing firearms, the Plaintiff was told she would need to speak with Officer Housell who would be able to assist her.   The Plaintiff requested a police report for the remaining missing firearms, but Officer Adams declined to do so stating that she should wait until things are sorted out with the five firearms that the department admitted taking.

i) At 4:01 p.m., the Plaintiff called the non-emergency line again and requested to speak with Officer Rousell.  She did not answer.

j) At 4:03 p.m., the Plaintiff's husband contacted his father, Dan Shaffer, and asked him to accompany the Plaintiff to the police department to retrieve the firearms seized by the police. Approximately 5-10 minutes later, the Plaintiff met Dan Shafter at the police station. She explained to the receptionist that Willie had died unexpectedly, and she had been told the police were in possession of five of his firearms.  The Plaintiff was there to retrieve them.

k) While waiting to be assisted, the Plaintiff noticed a sign posted at the station stating: "Firearms taken by the Leavenworth Police Department for safe-keeping would be held for 30 days, then would become the property of the Leavenworth Police Department."  The sign also noted that an appointment had to be made to retrieve firearms and that a state issued photo ID was also required to retrieve the property.  The receptionist informed the Plaintiff

that the firearms would not be released at that time and that the Plaintiff should return with an attorney.  She also stated that the Plaintiff would need to speak with Officer Rousell.  The Plaintiff inquired whether Officer Housell was available at that moment and was told she was not.  The Plaintiff left another message for Officer Rousell using the Department's phone.

l)  While there, the Plaintiff requested a copy of the police report.  The receptionist gave the Plaintiff a copy of an Officer Call Activity Report which had been redacted.  She was informed that if she came back with an attorney, she would receive the full, unredacted report at no additional charge. The receptionist also assured the Plaintiff that Officer Rousell would return her call.

m) On January 5, 2021, counsel for the Estate called the Leavenworth Police Department and demanded return of the illegally seized personal property of the Estate.  Major Nicodemus took the call and stated that the Leavenworth Police Department seized the property "pursuant to policy and without awarrant."  He stated that the Leavenworth Police Department "usually takes firearms for safekeeping."  When pressed for return of the property, Officer Nicodemus advised the undersigned that the property would be kept as the department was "waiting on the autopsy report" to be released.  Officer Nicodemus advised he would call counsel when the guns and property could be released.  That call never came.

n)  On  January 6, 2021, Major   Dan  Nicodemus sent   the Plaintiff   an
email  stating  that  the Leavenworth  Police  Department  seized five firearms
"as  part of  your  father's  death" investigation.

o)  On January 14, 2021, the Plaintiff received  her  father's death  certificate,
evidencing  her father died of natural causes and that no autopsy  was  ever
performed.

p)  Finally, on  Monday, April 12, 2021, the Petitioner received an email stating
that  the personal  property  of  the Estate  could  finally  be  released  to  her.
Upon  receipt  of  same,  the Petitioner  learned  that  the  Leavenworth  Police
Department  not  only  illegally  seized  various  firearms,  but  also  cash
belonging to her father.  The entire search of  the   home and seizure of the
property was without a  warrant or other court authorization.

6.  The   name and address of any public officer or  employee involved:

Chief Pat Kitchens, 601 S. 3rd Street, #2055,
Leavenworth,  KS 66048

Major Dan Nicodemus, 601 S. 3rd Street, #2055, Leavenworth, KS
66048

Officer Tapia, 601 S.  3rd Street, #2055, Leavenworth,
KS  66048

Officer Vogel, 601 S. 3rd Street, #2055, Leavenworth, KS  66048

7.  A concise statement of the nature and the extent of the injury claimed to have
been suffered:

Illegal search and seizure, including theft of various personal property including,
but  not limited to, firearms, money, knives, and medications.

## Count I: Unjust Enrichment or Quantum Meruit

1. That Plaintiff incorporates the statements and allegations set forth in paragraphs (5a-p) of this Petition & Complaint as though fully set forth herein.

2. "The elements of a claim for quantum meruit or unjust enrichment under Kansas law are as follows: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." (internal quotations and citations omitted)); *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 842, 846–48 (Kan. 1996) (addressing the "theory of quantum meruit/unjust enrichment" as one claim and reciting the three elements for such a claim).

3. To allow Defendant to now retain the monies and other property they have unjustly taken would be inequitable.

4. That Plaintiff's damages include, but are not necessarily limited to, the following: economic loss, emotional distress, and loss of use of property.

5. That Plaintiff request attorney's fees and cost be assessed against Defendants for their actions as described above as justice and equity require.

## Count II: Unlawful Conversion

6. That Plaintiff incorporates the statements and allegations set forth in paragraphs (5a-p) of this Petition & Complaint as though fully set forth herein.

7. Conversion is the wrongful taking of or control over the personal property of another person. *See* Clark Jewelers v. Satterthwaite, 662 P.2d 1301 (Kan. Ct. App. 1983).

8.    "[A] cause of action in tort for conversion [] accrues when substantial injury first appears  or when it becomes reasonably ascertainable." <u>Clark</u>, 662 P.2d at 1304 (Kan. Ct. App. 1983).

9.    A substantial injury "means the victim must have sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent." <u>Roe v. Diefendorf</u>, 689 P.2d 855, 859 (Kan. 1984).

10.    That Plaintiff's damages include, but are not necessarily limited to, the following: economic loss, emotional distress, and loss of use of property.

11.    That Plaintiff request attorney's fees and cost be assessed against Defendants for their actions as described above as justice and equity require.

<u>**Count III: Intentional Inflection of Emotional Distress**</u>

12.    That Plaintiff incorporates the statements and allegations set forth in paragraphs (5a-p) of this Petition & Complaint as though fully set forth herein.

13.    That the State of Kansas recognizes a cause of action for intentional inflection of emotional distress ("IIED"). *See* Roberts v. Saylor, 230 Kan. 289, 637 P.2d 1175 (1981).

14.    To establish a claim for IIED, the Plaintiff in the action must establish the following four (4) elements: (i) defendant must act intentionally or recklessly; (ii) defendant's conduct must be "extreme and outrageous"; (iii) plaintiff suffers "extreme and severe" emotional distress; and (iv) defendant's outrageous conduct caused this extreme emotional distress. *Id.* at 292.

15.    Defendant in this matter acted intentionally when seeking to cause Plaintiff emotional distress.

16.     Defendant's conduct was extreme and outrageous, in that Defendants knew they were taking property of Plaintiff's that was inherited from his Father, and therefore held extreme sentimental value; and then further continued to perpetrate a fraud.

17.     As a result Defendant's actions, Plaintiff has suffered from "extreme and severe" emotional distress.

18.     Such sever distress was caused by the outrageous actions of Defendants.

19.     That Plaintiff's damages include, but are not necessarily limited to, the following: economic loss, and emotional distress.

20.     That Plaintiff request attorney's fees and cost be assessed against Defendants for their actions as described above as justice and equity require.

## Count IV: Negligent Inflection of Emotional Distress

21.     That Plaintiff incorporates the statements and allegations set forth in paragraphs (5a-p) of this Petition & Complaint as though fully set forth herein.

22.     In Kansas, to state a claim for negligent infliction of emotional distress, a Plaintiff must plead that, "(1) she suffered physical injury, (2) as a direct result from the emotional distress caused by the defendant's negligence, and (3) the injury appeared within a short span of time after the emotional disturbance." *Ngiendo v. Univ. Partners*, 2:20-cv-02393-HLT-TJJ, at *5 (D. Kan. Mar. 25, 2022) (citing *Majors v. Hillebrand*, 349 P.3d 1283, 1285 (Kan. Ct. App. 2015)).

23.     That Defendant(s) herein both intentionally and negligently caused Plaintiff severe emotional distress.

24.     That specifically, when the Defendants herein unlawfully and immorally absconded with sentimental personal property items of Plaintiff's deceased father, Defendants caused Plaintiff

severe injury and emotional distress, including but not necessarily limited to post-traumatic stress, anxiety, and depression.

25.     That Defendants herein only further compounded the injury and emotional distress when Defendants refused to return certain personal property items of Plaintiff's deceased father, even after Plaintiff specifically brought said items and their unlawful seizure to the attention of Defendants and the City of Leavenworth municipal government.

26.     As a result of Defendant's actions, Plaintiff has suffered from "extreme and severe" emotional distress.

27.     That Plaintiff's damages include, but are not necessarily limited to, the following: economic loss, and emotional distress.

28.     That Plaintiff request attorney's fees and cost be assessed against Defendants for their actions as described above as justice and equity require.

### Damages

29.     That on information and belief, as a direct result of Defendants above stated actions, Plaintiff has been damaged financially in amount greater than $250,000.00.

### Request for Jury Trial

30.     Should this matter have to be tried before the Court, Plaintiff respectfully request trial by jury where permitted.

**WHEREFORE**, Plaintiff, Ebony Shaffer, respectfully requests that upon hearing, the Court grant the relief requested herein; that the Court find Defendant liable for violations of the Laws of the State of Kansas; that the Court award Plaintiff damages against Defendants in an amount determined to be fair, equitable and just; that the Court award Plaintiff his reasonable

attorneys' fees and costs in addition thereto; and that the Court issue such other and further orders as it deems necessary under the circumstances.

Respectfully submitted by,

BARNDS LAW, LLC

/s/ Christopher C. Barnds
Christopher C. Barnds          KS #25598
Barnds Law, LLC
7400 College Blvd, Suite 100
Overland Park, KS 66210
Phone: (913) 514-0909
Email: chris@barndslaw.com
*Attorney for Plaintiff*

_/s/ John W. Kerns
John W. Kerns          KS #20075
Barnds Law, LLC
7400 College Blvd, Suite 100
Overland Park, KS 66210
Phone: (913) 514-0909
Email: john@barndslaw.com
*Attorney for Plaintiff*

ELECTRONICALLY FILED
2022 Dec 05 PM 6:25
CLERK OF THE LEAVENWORTH COUNTY DISTRICT COURT
CASE NUMBER:  LV-2022-CV-000308
PII COMPLIANT

Ebony Shaffer

vs.

City of Leavenworth et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **City of Leavenworth**
>
> **100 N. 5th Street**
>
> **leavenworth, KS  66048**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Christopher C. Barnds
>
> 7400 College Blvd, Ste 100.
>
> Overland Park, KS 66210

within 21 days after service of summons on you.



Clerk of the District Court

Electronically signed  on 12/06/2022 09:16:36 AM

**Documents to be served with the Summons:**

PLE: Petition Complaint for Damages

ELECTRONICALLY FILED
2022 Dec 05 PM 6:25
CLERK OF THE LEAVENWORTH COUNTY DISTRICT COURT
CASE NUMBER:  LV-2022-CV-000308
PII COMPLIANT

Ebony Shaffer

vs.

City of Leavenworth et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Leavenworth Police Department**

**601 S. 3rd Street, #2055**

**Leavenworth, KS  66048**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Christopher C. Barnds

7400 College Blvd, Ste 100.

Overland Park, KS 66210

within 21 days after service of summons on you.



Clerk of the District Court

Electronically signed  on 12/06/2022 09:16:36 AM

**Documents to be served with the Summons:**

PLE: Petition Complaint for Damages

ELECTRONICALLY FILED
2023 Jan 09 PM 2:22
CLERK OF THE LEAVENWORTH COUNTY DISTRICT COURT
CASE NUMBER:  LV-2022-CV-000308
PII COMPLIANT

### IN THE DISTRICT COURT OF LEAVENWORTH COUNTY, KANSAS

| | | |
|---|---|---|
| EBONY SHAFFER | ) | |
| | ) | |
| and | ) | Case No. LV-2022-DM-000308 |
| | ) | |
| CITY OF LEAVENWORTH and | ) | |
| LEAVENWORTH POLICE DEPARTMENT) | | |

### **ENTRY OF APPEARANCE**

COMES NOW John Kerns of BARNDS LAW, LLC, and hereby enters his appearance in the above-captioned matter on behalf of the Petitioner, Ebony Shaffer.

Respectfully submitted,

BARNDS LAW, LLC

/s/ *John Kerns*
John Kerns          KS #20075
7400 College Blvd, Ste. 100
Overland Park, KS 66210
Phone: (913) 514-0909
Fax: (913) 300-9858
E-mail: john@barndslaw.com
*Attorneys for Petitioner*

-1-

ELECTRONICALLY FILED
2023 Jan 09 PM 2:22
CLERK OF THE LEAVENWORTH COUNTY DISTRICT COURT
CASE NUMBER: LV-2022-CV-000308
PII COMPLIANT

## AFFIDAVIT OF SERVICE

**State of Kansas**                    **County of Leavenworth**                    **District Court**

Case Number: LV-2022-CV-000308

Plaintiff:
**EBONY SHAFFER**

vs.

Defendant:
**CITY OF LEAVENWORTH AND LEAVENWORTH POLICE DEPARTMENT**

POW2022013584

For:
Barnds Law LLC
10985 Cody St Ste 130
Overland Park, KS 66210

Received by D & B Legal Services, Inc. on the 27th day of December, 2022 at 11:57 am to be served on **CITY OF LEAVENWORTH, 100 N 5TH STREET, LEAVENWORTH, KS 66048**.

I, Andrew Wickliffe PPS22-0104, being duly sworn, depose and say that on the **29th day of December, 2022** at **2:14 pm, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **Summons and Complaint For Damages** with the date and hour of service endorsed thereon by me, to: **SARAH BODENSTEINER** as **CITY CLERK** at the address of: **100 N 5TH STREET, LEAVENWORTH, KS 66048**, who is authorized to accept service for **CITY OF LEAVENWORTH**.

I certify that I am over the age of 18 and have no interest in the above action and the foregoing statements made by me are true and correct.

Subscribed and Sworn to before me on the 3rd day of
January, 2023

**Andrew Wickliffe PPS22-0104**
Process Server

**D & B Legal Services, Inc.**
**P.O. Box 7471**
**Overland Park, KS 66207**
**(913) 362-8110**

NOTARY PUBLIC

Our Job Serial Number: POW-2022013584

JAMES HANNAH
Notary Public - State of Kansas
My Appt. Expires

Ebony Shaffer

vs.

City of Leavenworth et. al.

ELECTRONICALLY FILED
2022 Dec 05 PM 6:25
CLERK OF THE LEAVENWORTH COUNTY DISTRICT COURT
CASE NUMBER: LV-2022-CV-000308
PII COMPLIANT

**SUMMONS**

To the above-named Defendant/Respondent:

**City of Leavenworth**
**100 N. 5th Street**
**leavenworth, KS  66048**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Christopher C. Barnds
7400 College Blvd, Ste 100.
Overland Park, KS 66210

within 21 days after service of summons on you.

Wendy Mathews

Clerk of the District Court
Electronically signed  on 12/06/2022 09:16:36 AM

**Documents to be served with the Summons:**
PLE: Petition Complaint for Damages

**ELECTRONICALLY FILED**
2023 Jan 09 PM 2:22
CLERK OF THE LEAVENWORTH COUNTY DISTRICT COURT
CASE NUMBER: LV-2022-CV-000308
PII COMPLIANT

## AFFIDAVIT OF SERVICE

**State of Kansas**                    **County of Leavenworth**                    **District Court**

Case Number: LV-2022-CV-000308

Plaintiff:
**EBONY SHAFFER**

POW2022013583

vs.

Defendant:
**CITY OF LEAVENWORTH AND LEAVENWORTH POLICE DEPARTMENT**

For:
Barnds Law LLC
10985 Cody St Ste 130
Overland Park, KS 66210

Received by D & B Legal Services, Inc. on the 27th day of December, 2022 at 11:57 am to be served on **LEAVENWORTH POLICE DEPARTMENT, 601 S 3RD STREET #2055, LEAVENWORTH, KS 66048**.

I, Andrew Wickliffe PPS22-0104, being duly sworn, depose and say that on the **29th day of December, 2022** at **2:36 pm, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **Summons and Complaint For Damages** with the date and hour of service endorsed thereon by me, to: **SEAN FISHER** as **RECORDS SUPERVISOR**  at the address of: **601 S 3RD STREET #2055, LEAVENWORTH, KS 66048**, who is authorized to accept service for  **LEAVENWORTH POLICE DEPARTMENT**.

I certify that I am over the age of 18 and have no interest in the above action and the foregoing statements made by me are true and correct.

Subscribed and Sworn to before me on the 3rd day of
January, 2023

**Andrew Wickliffe PPS22-0104**
Process Server

**D & B Legal Services, Inc.**
**P.O. Box 7471**
**Overland Park, KS 66207**
**(913) 362-8110**

NOTARY PUBLIC

JAMES HANNAH
Notary Public - State of Kansas
My Appt. Expires

Our Job Serial Number: POW-2022013583

<u>Ebony Shaffer</u>

vs.

<u>City of Leavenworth et. al.</u>

ELECTRONICALLY FILED
2022 Dec 05 PM 6:25
CLERK OF THE LEAVENWORTH COUNTY DISTRICT COURT
CASE NUMBER:  LV-2022-CV-000308
PII COMPLIANT

**SUMMONS**

To the above-named Defendant/Respondent:

**Leavenworth Police Department**

**601 S. 3rd Street, #2055**

**Leavenworth, KS  66048**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Christopher C. Barnds

7400 College Blvd, Ste 100.

Overland Park, KS 66210

within 21 days after service of summons on you.

Wendy Matthews 

Clerk of the District Court

Electronically signed  on 12/06/2022 09:16:36 AM

**Documents to be served with the Summons:**

PLE: Petition Complaint for Damages

ELECTRONICALLY FILED
2023 Jan 16 PM 6:12
CLERK OF THE LEAVENWORTH COUNTY DISTRICT COURT
CASE NUMBER: LV-2022-CV-000308
PII COMPLIANT

**IN THE DISTRICT COURT OF LEAVENWORTH COUNTY, KANSAS**
**CIVIL COURT DEPARTMENT**

EBONY SHAFFER, and ESTATE OF ) 
WILLIE GILLOM, JR., Deceased )    Case No.  LV-2022-CV000308
    Plaintiffs )
vs. )    Division:
 )
CITY OF LEAVENWORTH )
and )
LEAVENWORTH POLICE )
DEPARTMENT, Et. Al. )
    Defendants )

<u>**PLANTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**</u>

    **COMES NOW** the Plaintiff, Ebony Shaffer, by and through undersigned counsel of record, pursuant to K.S.A. §§ 60-215 *et seq.* and hereby respectfully submits to the Court Plaintiff's *First Amended Complaint for Damages*. In support of this *First Amended Complaint*, Plaintiff states and alleges as follows:

    1.    That Plaintiff is filing *Plaintiff's First Amended Complaint for Damages* pursuant to pursuant to K.S.A. §§ 60-215(a)(1)(A).

    2.    That this *First Amended Complaint for Damages* is timely filed.

    3.    That this action seeks money damages because of the participation of Defendants, and their officers and agents, in a private parties' wrongful deprivation of Plaintiff's property. Plaintiff alleges that all of the Defendants acted under color of state law and violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States. Plaintiff also brings three (3) state law claims pursuant to this Court's supplemental jurisdiction.

**I.**      <u>**PARTIES**</u>

    4.    That Plaintiff, Ebony Shaffer ("Ms. Shaffer"), is a good faith resident of the State of Kansas, County of Leavenworth, presently residing at 16776 Dakota Drive, Leavenworth,

Kansas, 66048. Plaintiff is the daughter of one deceased, Mr. Willie Gillom, Jr. ("Decedent"), whom passed away on or about December 7, 2020, while residing in Leavenworth, Kansas.

5.      That Plaintiff, Estate of Willie Gillom, Jr. Deceased, is an estate formed under the laws of the State of Kansas, in Leavenworth County District Court, Probate Division, and that Plaintiff, Ebony Shaffer, is the duly appointed Administratrix of said estate (hereinafter collectively referred to as "Plaintiffs").

6.      That Defendant, Leavenworth Police Department, is a state level governmental law enforcement agency with a principle place of business located at 601 S 3rd St #2055, Leavenworth, KS 66048.

7.      That Defendant, the City of Leavenworth, is the local government whom employees Defendant Police Department, with a primary place of business located at 100 N 5th St, Leavenworth, KS 66048 (hereinafter "Defendant Police Department").

8.      The  name(s) and address(es) of any public officer or employee involved are as follows:

    a) Mr. Pat Kitchens, Chief of Police, Leavenworth Police Department, 601 S. 3rd Street, #2055, Leavenworth,  KS 66048;

    b) Mr. Dan Nicodemus,  Deputy Chief of Police, Leavenworth Police Department, 601 S. 3rd Street, #2055, Leavenworth,  KS 66048;

    c) Ms.  Ashley  Tapia,  Officer,  Leavenworth  Police  Department,  Leavenworth Police Department,  601 S. 3rd Street, #2055, Leavenworth,  KS 66048;

    d) Mr. Neil Vogel, Officer, Leavenworth Police Department, Leavenworth Police Department,  601 S. 3rd Street, #2055, Leavenworth,  KS 66048;

e) Mr. Shane Adams, Officer, Leavenworth Police Department, Leavenworth Police Department,  601 S. 3rd Street, #2055, Leavenworth, KS 66048; and

f) Ms. Leona Housell, Officer, Leavenworth Police Department, Leavenworth Police Department,  601 S. 3rd Street, #2055, Leavenworth, KS 66048.

## II.   <u>VENUE / JURISDICTION</u>

9.   That this Court has personal jurisdiction over all Defendants.

10.   That this Court has subject matter jurisdiction over Plaintiffs' state law complaints alleged herein, and supplemental jurisdiction over Plaintiff's complaints of violations of federal law.

11.   That venue in the District Court of Leavenworth County is properly placed.

## III.   <u>FACTS COMMON TO ALL COUNTS</u>

12.   At all times relevant hereto, Defendants acted in concert and under color of state law.

13.   That at approximately 2:59 p.m. on December 7, 2020, Plaintiff Shaffer received a phone call from her daughter, Kiara, whom had just been notified by Defendant Police Department that the Plaintiff's father, Mr. Gillom (Decedent), passed away while at his personal residence located at 76 Sheridan St., Leavenworth, KS 66048 (hereinafter "Decedent's Residence").

14.   At approximately 3:15 p.m. on this same date, Plaintiff arrived at Decedent's Residence. Plaintiff's daughter was also still on site.

15.   Upon arriving at Decedent's Residence, Plaintiff was handed a document with the following identifying information: (i) case number of 20-21474, (ii) Officer Tapia #1630,

Officer N. Vogel #1421, and (iii) phone numbers for Frontier Forensics, as well as the non-emergency police department line.

16.     After arriving, Plaintiff first proceeded into the downstairs garage area of Decedent's Residence, where Plaintiff knew her father had been found after passing. Plaintiff observed a white flannel sheet on the garage floor.

17.     Subsequently, Plaintiff went into Decedent's self-described "man-cave" area. Upon arriving in this area of Decedent's Residence, Plaintiff observed piles of clothes that had been removed from decedent's armoire, and then heaped on his recliner(s), along with two then empty plastic jars that were previously filled with loose change.

18.     Thereafter, Plaintiff remained at the residence to await the arrival of Plaintiff's brother, Mr. Clinton Gillom.

19.     At approximately 4:47 p.m. on December 7th, the Plaintiff called the non-emergency number for the Defendant Leavenworth Police Department.

20.     When calling, Plaintiff explained how the originally responding police officers had provided her daughter with a case number, officer names, and a phone number to contact regarding Decedent's passing, and Defendant Law Enforcements entry into Decedent's Residence.

21.     While on this call, Plaintiff further explained she was not familiar with the process of losing a loved one, and was therefore not sure what the next steps would be.

22.     At that time, the operator informed the Plaintiff she needed to contact Frontier Forensics about obtaining the decedent's body, and to notify Frontier Forensics whether they should release same.

23.     Shortly thereafter, the Plaintiff's brother arrived at Decedent's Residence.

4

24.     Upon his arrival, Plaintiff proceeded to show her brother where law enforcement reported having found their father's body, as well as the "man-cave" area of Decedent's Residence.

25.     After viewing this area of Decedent's Residence, Plaintiff and her brother discussed needing to check other areas of same.

26.     Plaintiff and her brother then proceeded to go upstairs to decedent's bedroom area.

27.     Upon entering decedent's bedroom area, both Plaintiff and her brother observed the room and closet area in complete disarray. By appearance, the closest had recently been searched through.

28.     Now concerned with what property in Decedent's Residence may have already been removed, the Plaintiff and her brother first sought to remove from the residence any firearms that were in plain sight, such as a series air rifles hanging in decedent's "man-cave" area.

29.     At this time, Plaintiff also sought to timely change the locks and deadbolts associated with Decedent's Residence.

30.     The following week, on or about December 14, 2020, Plaintiff attended the funeral of decedent, Mr. Gillom.

31.     Two days later, on or about December 16, 2020, Plaintiff and Plaintiff's husband began sorting through, and seeking to organize, decedent's personal property and belongings located in Decedent's Residence.

32.     Upon searching Decedent's Residence, Plaintiff and Plaintiff's husband came across empty gun cases, empty knife boxes, and missing ammo for firearms. Yet, Plaintiff

failed to find any additional firearms or rifles, despite knowing decedent possessed same in Decedent's Residence at the time of his passing.

33.     Now in a noticeably concerned state, Plaintiff's husband—a Federal Licensed Firearm dealer—instructed Plaintiff to immediately contact the local Leavenworth Police Department to report the missing firearms as stolen.

34.     At approximately 3:41 p.m. on December 16, 2020, Plaintiff contacted Defendant Police Department's non-emergency line, advising the dispatcher Plaintiff needed to file a police report for the missing firearms.

35.     The dispatcher immediately asked Plaintiff for the address of the residence (e.g., Decedent's Residence) where the firearms were located, and the number of firearms Plaintiff believed had been stolen.

36.     Plaintiff then observed a prolonged, awkward pause.

37.     After this prolonged pause, Plaintiff was advised two police officers would be out to Decedent's Residence shortly to take a formal report from Plaintiff.

38.     Approximately ten (10) minutes later, at or around 3:54 p.m., Plaintiff received a follow-up phone call from Defendant Police Department and an Officer Adams.

39.     Officer Adams advised Plaintiff that contrary to her last call, Defendant Police Department would not be sending any police officer(s) to Decedent's Residence to take a report.

40.     During this phone call, Officer Adams further advised Plaintiff, notably for the first time, that Defendant Police Department had, at the time of responding initially

to Decedent's Residence, not only conducted a thorough search of Decedent's Residence, but that when doing so, further seized any firearms police came across.

41.     When Plaintiff inquired into why Defendant Police Department had taken the firearms without alerting Plaintiff, or anyone else for that matter, Officer Adams replied the firearms were taken "for safekeeping."

42.     Officer Adams further added that it is standard procedure for Defendant Police Department to automatically seize firearms, as well as any prescription medications responding law enforcement may come across, so as to reportedly ensure no one else would get them.

43.     As it related to the missing firearms specifically, Officed Adams advised Plaintiff she would need to speak with one Officer Housell, as Officer Housell would the officer who could assist Plaintiff in getting the firearms and any other property back.

44.     Near the conclusion of the call, Plaintiff respectfully asked if Officer Adams could please ensure a police report was prepared noting the call and Plaintiff's reporting of the missing firearms.

45.     Officer Adams, responding, advised Plaintiff no Police Report would be made for Plaintiff's call or associated report.

46.     Officer Adams further advised Plaintiff she should wait for the matter to get "sorted out", and that Officer Housell, or some other representative from Defendant Police Department, would contact Plaintiff regarding the firearms Defendant Police Department seized.

47.     During this communication, Officer Adams made a comment indicating Defendant Police Department has seized five (5) firearms.

48.     At approximately 4:01 p.m. on December 16, 2020, Plaintiff called Defendant Police Department's non-emergency line again, this time requesting to speak with Officer Housell.  Officer Housell did not pick-up Plaintiff's call.

49.     Moments later, at approximately 4:03 p.m., Plaintiff's husband contacted his father, Mr. Dan Shaffer, and asked him to accompany the Plaintiff to the police department to retrieve the firearms seized by the police.

50.     At approximately 4:20 p.m. this same date, Plaintiff met Mr. Shafter at Defendant Police Department.

51.     Upon arrival, Plaintiff advised a receptionist for Defendant Police Department of the decedent's unexpected passing, that Defendant Police Department were first on scene, and that Officer Adams had advised Plaintiff Defendant Police Department has seized five (5) firearms from Decedent's Residence.

52.     Plaintiff requested the return of the personal property (e.g. firearms) that was seized. The receptionist advised Plaintiff she would need to speak with her supervisor.

53.     While waiting to be assisted, Plaintiff noticed a sign posted at the station stating: "Firearms taken by the Leavenworth Police Department for safe-keeping would be held for 30 days, then would become the property of the Leavenworth Police Department."

54.     Plaintiff also then noted that an appointment had to be made to retrieve firearms and that a state issued photo ID was also required to retrieve the property.

55.     It was around this same moment that the  receptionist returned and informed Plaintiff the firearms would not be released to Plaintiff at that time. Plaintiff was further advised to return with an "attorney," and that she would need to speak with Officer Housell.

56.     Plaintiff respectfully inquired into whether Officer Housell was available to speak at that time. Plaintiff was advised she was not. As a result, Plaintiff sought to leave a second message for Officer Housell, this time using Defendant Police Department's phone.

57.     While beginning to leave, Plaintiff requested a copy of the Police Report relating to Defendant Police Department's initial December 7th visit to Decedent's Residence.

58.     In response, Plaintiff was provided a copy of an Officer Call Activity Report, which had been redacted.

59.     Plaintiff was advised at that time should she have an attorney return with her, should could receive the full, unredacted report at no additional charge. The receptionist also assured the Plaintiff that Officer Housell would return her call.

60.     Thereafter, on or about December 31, 2020, Petitioner's probate attorney's paralegal and the Petitioner went to the Defendant Police Department, provided Defendant Police Department with Petitioner's Letters of Administration to show Petitioner was the executrix of the Estate of the decedent.

61.     It was at this time, Plaintiff was first told that Plaintiff would need to speak with Andrew Brinker at a satellite office.

62.     Upon information and belief, the Defendant Police Department (e.g., the Leavenworth Police Department) has no satellite office.

63.     Running into repeated problems, on or about January 5, 2021, Plaintiff had counsel for the decedent's Estate call the Leavenworth Police Department and demanded return of the illegally seized personal property of the Estate.

64.     Major Nicodemus took the call from the Estate's attorney.

65.     During this correspondence, Major Nicodemus reported Defendant Police Department seized the property "pursuant to policy and without a warrant." Subsequently adding Defendant Police Department "usually takes firearms for safekeeping."

66.     When pressed for return of the property, Officer Nicodemus advised the Estate's attorney that the property would be kept as the department was "waiting on the autopsy report" to be released.

67.     Officer Nicodemus reported he would follow-up with the Estate's attorney when the guns and any other seized property could be released.

68.     That Plaintiff would state and affirm such a call never came.

69.     Thereafter, on or about January 6, 2021, Major Nicodemus sent Plaintiff an email stating Defendant Police Department seized five firearms "as part of your father's death" investigation.

70.     Subsequently, on or about January 14, 2021, Plaintiff received her father's death certificate, evidencing her father died of natural causes, adding no autopsy was ever performed.

71.     Finally, on or about Monday, April 12, 2021, Petitioner received an email stating that the personal property of the Estate could finally be released to Plaintiff.

72.     That upon receipt of decedent's personal property returned by Defendant Police Department, Petitioner learned Defendant Police Department not only illegally seized various firearms of the decedent and his estate, but that Defendant Police Department also seized previously undisclosed sums of government currency (e.g., cash) in the Decedent's Residence at the time of passing.

73.     All of the aforementioned activity was conducted without a warrant, or other valid court order.

## IV.     AMENDED COUNTS FOR DAMAGES

### AMENDED COUNT I:
### 42 U.S.C. § 1983—AGAINST ALL DEFENDANTS

74.     Plaintiff incorporates herein by reference the statements and allegations provided for in the preceding paragraphs of this *Amended Complaint* as though fully set forth herein.

75.     Defendants at all times relevant to this action were acting under color of state law.

76.     Defendants unlawfully deprived Plaintiffs of property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States

77.     Defendants made an unreasonable and warrantless seizure of Plaintiffs' personal property in violation of the Fourth Amendment to the Constitution of the United States as incorporated and applied to the states by way of the Fourteenth Amendment to the Constitution of the United States.

78.     At all times relevant hereto, Defendants acted pursuant to a policy or custom of Defendant City and Defendant Police Department of depriving Plaintiffs of personal property without court order, and without due cause.

79.     Defendant City and Defendant Police Department failed to adopt clear policies and failed to properly train its deputies as to the proper role of officers in private disputes such as repossession.

80.     Defendant City and Defendant Police Department's policy or custom, and its failure to adopt clear policies and failure to properly train its officers and employees, were a direct and proximate cause of the constitutional deprivation suffered by Plaintiff.

81.     That in 2021, the Supreme Court of the United States (SCOTUS) recently reaffirmed its prior holding that local law enforcement has no authority to enter, search, and/or seize items from the residence of a private citizen, *absent* a valid warrant. *See* Caniglia v. Strom, 141 S. Ct. 1596 (2021).

82.     And while SCOTUS confirmed there may be "a few permissible" exceptions to this general rule when "certain exigent circumstances exist[,]" the *'caretaking' and 'safekeeping' function of local law enforcement officials is not one such exception. Id.*

83.     Indeed, in its published opinion, SCOTUS specifically finds and holds "The First Circuit's 'community caretaking' rule [] goes beyond anything this Court has recognized." *Id.* at 1599.

84.     Defendants' actions and asserted practice herein is directly analogous to the "community caretaking" exception SCOTUS analyzed and found unconstitutional in its *Caniglia* opinion. *Id.*

85.     That Defendants' unlawful actions herein caused harm and damages to Plaintiffs.

### AMENDED COUNT II:
### UNLAWFUL CONVERSION—AGAINST ALL DEFENDANTS

86.     Plaintiff incorporates herein by reference the statements and allegations provided for in the preceding paragraphs of this *Amended Complaint* as though fully set forth herein.

87.     Conversion is the wrongful taking of or control over the personal property of another person. *See Clark Jewelers v. Satterthwaite*, 662 P.2d 1301 (Kan. Ct. App. 1983).

88.     "[A] cause of action in tort for conversion [] accrues when substantial injury first appears or when it becomes reasonably ascertainable." *Clark*, 662 P.2d at 1304 (Kan. Ct. App. 1983).

89.     A substantial injury "means the victim must have sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent." *Roe v. Diefendorf*, 689 P.2d 855, 859 (Kan. 1984).

90.     Without Plaintiff's consent, Defendants intentionally deprived Plaintiff of rightful possession of the her deceased father's personal property.

91.     At all times relevant hereto, Defendants acted with malice, recklessness and total and deliberate disregard for the contractual and personal rights of Plaintiff.

92.     Plaintiff request attorney's fees and cost be assessed against Defendants for their actions as described above as justice and equity require.

### AMENDED COUNT III:
### INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS –AGAINST ALL DEFENDANTS

93.     Plaintiff incorporates herein by reference the statements and allegations provided for in the preceding paragraphs of this *Amended Complaint* as though fully set forth herein.

94.     That the State of Kansas recognizes a cause of action for intentional inflection of emotional distress ("IIED"). *See Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175 (1981).

95.     To establish a claim for IIED, the Plaintiff in the action must establish the following four (4) elements: (i) defendant must act intentionally or recklessly; (ii) defendant's conduct must be "extreme and outrageous"; (iii) plaintiff suffers "extreme and severe" emotional distress; and (iv) defendant's outrageous conduct caused this extreme emotional distress. *Id.* at 292.

96.     Defendants in this matter acted intentionally or with reckless disregard in causing Plaintiff extreme and severe emotional distress.

97.     Plaintiff suffers "extreme and severe" emotional distress.

98.     Defendant's outrageous conduct caused Plaintiff's extreme emotional distress.

99.     Defendant's conduct was extreme and outrageous, in that Defendants knew they were taking property of Plaintiff's that was inherited from his Father, and therefore held extreme sentimental value; and then further continued to perpetrate a fraud.

100.    That Plaintiff request attorney's fees and cost be assessed against Defendants for their actions as described above as justice and equity require.

**AMENDED COUNT IV:**
**NEGLIGENT INFLECTION OF EMOTIONAL DISTRESS –AGAINST ALL DEFENDANTS**

101.    Plaintiff incorporates herein by reference the statements and allegations provided for in the preceding paragraphs of this *Amended Complaint* as though fully set forth herein.

102.    In Kansas, to state a claim for negligent infliction of emotional distress, a plaintiff must plead that, "(1) she suffered physical injury, (2) as a direct result from the emotional distress caused by the defendant's negligence, and (3) the injury appeared within a short span of time after the emotional disturbance." *Ngiendo v. Univ. Partners*, 2:20-cv-02393-HLT-TJJ, at *5 (D. Kan. Mar. 25, 2022) (citing *Majors v. Hillebrand*, 349 P.3d 1283, 1285 (Kan. Ct. App. 2015)).

103.    Plaintiff seeks to plead in the alternative, in that should the court or a jury ultimately find Defendant Police Department lacked the necessary level of intent to support a finding of intentional infliction of emotional distress, the Defendant Police Department should then be found to have, at a minimum, engaged in negligent infliction of emotional distress.

104.    That specifically, when Defendant Police Department unlawfully and immorally absconded with sentimental personal property items of Plaintiff's deceased father, Defendants caused Plaintiff severe injury and emotional distress, including but not necessarily limited to post-traumatic stress, anxiety, and depression.

105.    That Defendant Police Department only further compounded the injury and emotional distress when Defendant refused to return certain personal property items of Plaintiff's

deceased father, even after Plaintiff specifically brought said items and their unlawful seizure to the attention of Defendant Police Department and the City of Leavenworth.

106.     Plaintiff request attorney's fees and cost be assessed against Defendants for their actions as described above as justice and equity require.

## V.       AMENDED DAMAGES

107.     On Plaintiff's first count, a judgment for compensatory damages in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all Defendants.

108.     On Plaintiff's second count, a judgment for compensatory and punitive damages in an amount to be determined at trial, against Defendants.

109.     On Plaintiff's third count, a judgment for compensatory and punitive damages in an amount to be determined at trial, against Defendants.

110.     On Plaintiff's fourth count, a judgment for compensatory and punitive damages in an amount to be determined at trial, against Defendants.

111.     An award of costs and expenses against the Defendants

112.     Any and all other relief this Court may deem appropriate.

## VI.      JURY TRIAL

113.     Should this matter have to be tried before the Court, Plaintiff respectfully request trial by jury on all appropriate issues and count(s).

**WHEREFORE**, Plaintiff respectfully prays that upon hearing and consideration, the Court grant the relief requested herein; that the Court find Defendants liable for violations of the Laws of the State of Kansas, as well as the United States Government; that the Court award Plaintiff damages against Defendants in an amount determined to be fair, equitable and just; that the Court

award Plaintiff reasonable attorneys' fees and costs in addition thereto; and that the Court issue

such other and further orders as it deems necessary under the circumstances.

*Respectfully submitted by,*

BARNDS LAW, LLC

 /s/ Christopher C. Barnds
Christopher C. Barnds        KS #25598
Lighton Plaza
7400 College Blvd, Suite 100
Overland Park, KS 66210
Phone: (913) 514-0909
Email: chris@barndslaw.com

 /s/ John W. Kerns
John W. Kerns        KS #20075
Lighton Plaza
7400 College Blvd, Suite 100
Overland Park, KS 66210
Phone: (913) 514-0909
Email: john@barndslaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF MAILING

I, the undersigned, hereby certify that I have caused a true and correct copy of the above and forgoing document to be served on each of the following, via email, on this  16th  day of January , 2023 , to:

Andrew D. Holder
aholder@fpsslaw.com
Attorney for Defendants

/s/ Christopher C. Barnds
*Attorneys for Plaintiff*

16